UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE LAMONT AINSWORTH, A.K.A. ELIJAH SIDDIQ,<br><br>Petitioner,<br><br>v.<br><br>M.E. SPEARMAN, WARDEN,<br><br>Respondent. | No. 2:19-cv-0232 KJM DB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Petitioner, a state prisoner proceeding pro se and in forma pauperis, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

Petitioner has filed two motions to stay his petition. (See ECF Nos. 10, 12). Also pending are findings and recommendations to dismiss this action for failure to exhaust. (See ECF No. 8). For the reasons stated below, the undersigned shall vacate in part its February 11, 2019, order recommending that the petition be dismissed for failure to exhaust. (See id.). Thereafter, the undersigned shall recommend that petitioner's stay motion filed February 25, 2019 (see ECF No. 10) be denied as incomplete and that petitioner's stay motion filed March 25, 2019 (see ECF No. 12) be denied as moot. It shall also be recommended that this action be dismissed for lack of jurisdiction.

////

1

## I. RELEVANT PROCEDURAL HISTORY

On February 6, 2019, petitioner filed the instant petition for writ of habeas corpus. (ECF No. 1). A review of it clearly showed that petitioner had not exhausted all his remedies at the state court level. (See id. at 3) (petitioner stating, "I have not completed all of my remedies in the lower courts."). As a result, on February 11, 2019, the court issued findings and recommendations that the action be dismissed for failure to exhaust state remedies. (ECF No. 8). A determination on those findings and recommendations is outstanding.[1]

On February 25, 2019, petitioner filed a motion to stay the proceedings. (ECF No. 10). Because the motion failed to indicate upon which grounds petitioner wished to stay the proceedings, on March 4, 2019, the undersigned did not rule on it and instead issued an order directing petitioner to indicate to the court whether he wished to stay proceedings pursuant to Rhines v. Weber, 544 U.S. 269 (2005) or Kelly v. Small, 315 F.3d 1063 (9th Cir. 2002). (See ECF No. 11).

On March 25, 2019, petitioner filed a second motion to stay, indicating that he wishes to stay these proceedings pursuant to Rhines. (See ECF No. 12). The court considers this request as well as the substance and viability of petitioner's claims herein.

## II. RELEVANT FACTS

Petitioner states that he was arrested in March 2009 and was eventually convicted of kidnap for ransom, the principal charge in his case. (See ECF No. 1 at 4). As a result, he received a sentence of 178 years, 10 months to life with parole eligibility in 2152. (See id. at 4, 12). He began serving the term in April 2013. (See id. at 4).

The instant petition raises two claims. The first claim is somewhat convoluted and difficult to understand. Nevertheless, the court understands petitioner to be arguing that trial court error "unseen at the time" has led him to being required to serve a sentence that is three

////

---

[1] Given that the undersigned considers herein petitioner's motion to stay pursuant to Rhines v. Weber, 544 U.S. 269 (2005) (ECF No. 12), the February 11, 2019, findings and recommendations (ECF No. 8) shall be vacated in part to the extent that they recommend dismissal for failure to exhaust state court remedies.

2

times the amount of his "principal charge" of seven years to life prior to being eligible for parole and that this constitutes cruel and unusual punishment. (See id. at 4).

Petitioner's second claim contends that he is being denied equal protection under the law because the California Department of Corrections and Rehabilitation ("CDCR") has not applied Proposition 57's milestone earning credits towards his youth offender parole eligibility date. (See id. at 4). Instead, those credits are being applied towards his "regular [offender parole] date of 2152."[2] (See id. at 4) (brackets added). This, he claims, constitutes discrimination. (See id. at 4).

## III. APPLICABLE LAW

### A. State and Federal Law: Juvenile Sentences Beyond Natural Life Expectancy

The imposition of a sentence of life without the possibility of parole ("LWOP") on juvenile offenders who did not commit homicide is prohibited. Graham v. Florida, 560 U.S. 48, 74 (2010). In 2012, the California Supreme Court held that sentencing a juvenile offender who is convicted of a nonhomicide controlling offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy is the functional equivalent of LWOP and violates Graham. See People v. Caballero, 55 Cal. 4th 262, 268 (2012); see also People v. Franklin, 63 Cal. 4th 262, 268 (2016).

In accord with these holdings, California Penal Code § 3051 requires that similarly situated youth offenders be given a parole eligibility hearing after no more than twenty-five years of incarceration. See generally Cal. Penal Code § 3051(a)(1), (b)(1)-(4). In addition, California Penal Code § 4801 requires parole review boards to give prisoners whose controlling offense was committed before age twenty-five special and weighted youth-related consideration when determining their eligibility for parole. See Cal. Penal Code § 4801(c). Thus, the grant to a juvenile offender of a youth offender parole eligibility hearing date serves to moot any argument

////

---

[2] On its face, as it has been presented in the petition, this equal protection argument makes no sense. The claim does not identify who is receiving preferential treatment and how. However, a general review other documents and appeals attached to the petition have enabled the court to determine with somewhat more clarity what it believes petitioner's equal protection argument is.

that an extended sentence constitutes cruel and unusual punishment.  See Franklin, 63 Cal. 4th at 268.

### B. Federal Law: Parole and Good-Time Credits

"[T]he Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison."  Wolff v. McDonnell, 418 U.S. 539, 557 (1974).  Moreover, there is no constitutional right to parole, and a state is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime.  See Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979) (no right to parole); see also Graham, 560 U.S. at 75 (no eventual freedom to juvenile).

At the same time, however, the Supreme Court has held that California law creates a liberty interest in parole.  See Swarthout v. Cooke, 562 U.S. 216, 219-20 (2011) (citation omitted).  The Ninth Circuit has yet to determine whether California law creates a liberty interest in good-time or any other type of credits.  See generally Edwards v. Swarthout, 597 Fed.Appx. 914, 915-16 (9th Cir. 2014) (stating court has not had occasion to decide whether California Penal Code § 2933 as amended in 2010 to allow receipt of good-time credits based upon time served in prison creates a liberty interest); but see In re Johnson, 176 Cal. App. 4th 290, 297 (2009) (stating California's required invocation of administrative and procedural safeguard mechanisms prior to revoking inmate's conduct credits creates vested liberty interest protected by Due Process Clause).

## IV. DISCUSSION

A closer, substantive review of petitioner's two claims reveals that neither one is cognizable on federal habeas review because each alleges state court error in the application of state law.  (See ECF No. 1 at 4).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996) (holding alleged errors in state law not cognizable in federal habeas proceedings).  Therefore, a Rhines analysis may not be conducted in this matter, given that this court has no subject matter jurisdiction to consider these claims.  Consequently, for the reasons

listed below, the undersigned shall recommend that petitioner's motion for a stay pursuant to Rhines be denied as moot and that this action be dismissed for lack of jurisdiction.

### A. Claim One: Improper Sentencing to Three Times the Length of Controlling Offense

#### 1. Summary of Claim

In Claim One of the petition, petitioner argues that because of a trial court error, he received a sentence that requires him to serve three times his principal charge of seven years to life before he is eligible for parole. (See ECF No. 1 at 4). He contends that as a youth offender, his parole eligibility date should be much earlier than 2028. (See id. at 4-35). Despite these facts, petitioner argues, he is being held to serve nineteen years, which is more than the seven years to life sentence that his controlling offense actually warrants. (See id. at 4). The claim states in its entirety:

> Due to the trail [sic] courts [sic] error – that was unseen at the time – I am being held 3 times (19 years) the amount of my controlling offence [sic] of 7 to Life; [sic] as a youth offender under Assembly Bill 1308.
> Term started on 4/26/2013 from an arrest in March of 2009; case#: F20150, and was sentenced to 178 yrs, 10 mnths [sic] to life with parole in 2152. In January 2018 Assembly Bill 1308 made me a Youth Offender [sic] due to P.C. § 3051 & [sic] the crual [sic] and unusual, and harsh sentence imposed in my sentence. Yet, I am still being sentenced in such a manner – pursuant to § P.C. 3051 – by holding me to serve 3 times my princible [sic] charge of 7 to life; 3051 says in essence that all other counts are stayed in light of the principle [sic] charge; which is still excessive. My 7 to life makes me eligible under other preexisting laws.

(ECF No. 1 at 4) (brackets added).

The court understands petitioner's statements to mean that in January 2018, Assembly Bill 1308 (as codified in California Penal Code § 3051) "made [him] a youth offender." (See ECF No. 1 at 4) (brackets added). Petitioner appears to argue that his principal charge yielded a sentence of seven years to life, and that Section 3051 stays all counts other than the principal charge. (See id. at 4). Petitioner, however, provides no legal support for his statements. Moreover, a review of Section 3051 shows that it does not support petitioner's statements. In addition, none of the documents petitioner has presented in support of the petition appear to

5

establish that he has been sentenced in error.  (See generally ECF No. 1 at 7-35).

### 2. Analysis

This claim raises state law questions about the application of state law.  "Federal habeas corpus relief does not lie for errors of state law." Lewis, 497 U.S. at 780.  Instead, we must defer to the state court's interpretation of state law.  See generally Estelle, 502 U.S. at 67-68. Assuming however, for the sake of argument that the trial court did, in fact, err in sentencing petitioner, absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws also fails to justify federal habeas relief.  Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994).  Neither a showing of trial court error, nor a showing of fundamental unfairness has been presented in the petition.  (See generally ECF No. 1).  Therefore, Claim One is not cognizable on federal habeas review and should be dismissed.

**B.    Claim Two: Failure to Apply Milestone Credits to Youth Offender Parole Eligibility Date**

### 1. Summary of Claim

In Claim Two of the petition, petitioner appears to be arguing that the application of his milestone credits to his controlling offense parole eligibility date of 2152 instead of to his youth offender parole eligibility date of 2028 constitutes discrimination because he will never live to see his primary offender parole eligibility date of 2152.[3]  (See generally ECF No. 1 at 4-35).  The claim states in its entirety:

> Due to CDCR no [sic] applying proposition [sic] 57 milestone earning credits towards my youth offender eligibility parole date (YEPD), is discrimination [sic] & [sic] not providing me with equal protection under the law.
> I, in order to show that I have been rehabilitated to the parole board, I must display such behavior.  Like those who receive milestone credit earnings under Prop.[] 57, they earn time off their sentence for their rehabilitative achievements. Where there is me, I do not get that milestone credit earnings put forth to my youth offender date, yet I do towards my regular date of 2152.  This is a date that should not be enforced nor even acknowledged because it is a date that i'll [sic] never see.

---

[3] Because petitioner's second claim was difficult to understand, the court has reviewed the attachments to the petition as well in order to determine the essence of it.  See generally Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

6

> Similarly, if the prison is acknowledging my YEPD and others are getting milestones, why am I being discriminated against because I am a youth offender. [sic]. Hence discrimination.

(ECF No. 1 at 4) (brackets added).

In sum, petitioner appears to argue that applying his milestone credits to his controlling offense parole eligibility date is effectively pointless and denies him any meaningful chance to earn an earlier parole date, unlike other prisoners (with presumably much shorter sentences) who do have a meaningful chance to earn an earlier parole date when their milestone credits are applied to their controlling offense parole eligibility dates. (See generally id. at 4-35). This, different treatment, he appears to argue, violates his rights under the Equal Protection Clause. (See generally id. at 4-35).

### 2. Analysis

#### a. No Protected Right Under the Constitution or Federal Law

With respect to petitioner's argument that his milestone credits should be applied to his youth offender parole eligibility hearing date instead of to the standard minimum parole eligibility hearing date, given that there is no constitutional right either to good-time credit or to parole (see Wolff, 418 U.S. at 557; Greenholtz, 442 U.S. at 7), and that no juvenile offender has the right to eventual freedom (see Graham, 560 U.S. at 75), this argument does not raise either a constitutional question or an otherwise established violation of federal law. Therefore, it is not a claim that this court may review. See 28 U.S.C. § 2254(a).

#### b. No State-Created Liberty Interest Subject to Due Process Review

As for whether Claim Two adequately shows that petitioner has a state-created liberty interest protected by the Due Process Clause of the Fourteenth Amendment in how his milestone credits are applied to either of petitioner's parole eligibility hearing dates, petitioner has not cited to any California statutes or case law that indicates such an interest has been conferred upon prisoners by the State. (See generally ECF No. 1 at 4-35). Furthermore, a cursory review of Franklin and its progeny does not yield such a finding, either. See generally Franklin; People v. Contreras, 4 Cal. 5th 349, 384-85 (2018) (Cantil-Sakauye, C.J., dissenting) (noting expansion of

milestone completion credit and other credit programs may make youth offenders eligible for parole even sooner, in lockstep with Graham); Cal. Code Regs., tit. 15, § 3043.3 (regulation governing milestone completion credit). Because there appears to be no state-created liberty interest in the application of milestone credits towards a youth offender parole eligibility date, the propriety, fairness and/or efficacy of applying them to petitioner's minimum parole eligibility date of 2152 – a sentence that far exceeds petitioner's natural life expectancy – is not within the purview of this court.

Claim Two does not assert that petitioner is not receiving his credits; it simply asserts that respondent is not applying them in a way that petitioner believes respondent should, which would lead to an earlier parole eligibility date and, by extension, the potential for an earlier release date. Unfortunately for petitioner, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz, 442 U.S. at 7 (brackets added). Whether petitioner's milestone credits are being properly applied to what is effectively a sentence of life without the possibility of parole is not within the province of a federal court's jurisdiction. See Estelle, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); 28 U.S.C. § 2254(a) (establishing district court's consideration of habeas petition only on grounds that petitioner is in custody in violation of Constitution, laws or treaties of United States). It is a question for the state courts to decide.

Petitioner has already received a date for his youth offender parole eligibility hearing. It is March 27, 2028.[4] (See ECF No. 1 at 7). Under Section 4801, the hearing must "give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of petitioner in accordance with relevant case law." Cal. Penal Code § 4801(c); see Graham, 560 U.S. at 75 (stating State must give juvenile offenders convicted of nonhomicide crimes "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation"). It does not appear that California

---

[4] Petitioner also has an elderly parole eligibility date of April 9, 2046. (See ECF No. 1 at 7).

8

law requires anything more to protect youth offenders, and if it does, whether applying credits to juvenile offender parole eligibility dates instead of to standard parole eligibility hearing dates is a part of that protection is a question of state law.

In sum, Claim Two is simply another assertion by petitioner that the state is misapplying its laws, laws that petitioner himself fails to identify. As stated similarly earlier, "[s]tate courts are the ultimate expositors of state law," and a federal habeas court is bound by the state's interpretations unless "it appears to be an obvious subterfuge to evade the consideration of a federal issue." See Mullaney v. Wilbur, 421 U.S. 684, 691 n.11 (1975) (brackets added); see Peltier v. Wright, 15 F.3d 860, 863 (9th Cir. 1994) (citing Mullaney).

### c. No Viable Equal Protection Clause Claim

Finally, the fact that petitioner asserts a violation of the Equal Protection Clause within Claim Two does not make it a viable one, either. A petitioner may not transform state law issues into federal ones by simply asserting federal constitutional claims. See Langford, 110 F.3d at 1389. Moreover, petitioner's status as a prisoner with two different parole eligibility dates – one as a youth offender and one as a standard offender – is not a protected class, nor is there any indication that by the CDCR applying petitioner's milestone credits to his "regular" or minimum parole eligibility date instead of to his youth offender parole eligibility date, he is being treated any differently than any other prisoner. For these reasons, Claim Two is also not cognizable on federal habeas review and should also be dismissed.

### V. CONCLUSION

A substantive review of each of petitioner's claims leads the undersigned to find that neither of them adequately allege that he is in custody in violation of the Constitution or laws or treaties of the United States. See 28 U.S.C. § 2254(a). As a result, the claims do not fall under the jurisdiction of federal habeas review, which in turn, renders moot the need for a Rhines analysis. For these reasons, it shall be recommended that petitioner's motion to stay and abey filed February 25, 2019 (ECF No. 10) be denied as incomplete and that his motion to stay and abey pursuant to Rhines, filed March 25, 2019 (ECF No. 12) be denied as moot. In addition, it shall also be recommended that this action be dismissed for lack of subject matter jurisdiction.

Accordingly, IT IS HEREBY ORDERED that:

1. The undersigned's order and findings and recommendations, issued February 11, 2019 (ECF No. 8), are VACATED IN PART;

2. The February 11, 2019 order (ECF No. 8) is VACATED to the extent that it recommends that petitioner's petition be dismissed for failure to exhaust state remedies, and

3. The Clerk of Court is directed to serve a copy of these findings and recommendations together with a copy of the petition filed in the instant case on the Attorney General of the State of California.

IT IS FURTHER RECOMMENDED that:

1. Petitioner's motion to stay his federal habeas petition, filed February 25, 2019 (ECF No. 10), be DENIED as incomplete;

2. Petitioner's motion to stay his federal petition pursuant to <u>Rhines v. Weber</u>, 544 U.S. 269 (2005), filed March 25, 2019 (ECF No. 12), be DENIED as moot, and

3. The action be DISMISSED for lack of subject matter jurisdiction. <u>See</u> 28 U.S.C. § U.S.C. § 2254(a).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, petitioner may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 30, 2019

/s/ DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:13
DB/ORDERS/ORDERS.PRISONER.HABEAS/ains0232.stay&abey.of&r